**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**KEVIN WEBB,**

**Plaintiff,**

**v.** **CASE NO.:**

**TOMMY BAHAMA**
**R&R HOLDINGS, INC.,**

**Defendant.**

______________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KEVIN WEBB, by and through undersigned counsel, brings this action against Defendant, TOMMY BAHAMA R&R HOLDINGS, INC. ("Defendant"), and in support of his claims states as follows:

## JURISDICTION AND VENUE

1. This is an action for damages and equitable relief arising from violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*.

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in the Middle District of Florida because Defendant employed Plaintiff in Sarasota, Florida, and the unlawful employment practices alleged in this Complaint occurred in Sarasota County, Florida.

**PARTIES**

4. Plaintiff is a resident of Manatee County, Florida.

5. Defendant is an employer doing business in Sarasota County, Florida, including at 300 John Ringling Boulevard, Sarasota, Florida 34236.

**GENERAL ALLEGATIONS**

6. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the ADA and Title VII.

7. At all times material hereto, Defendant employed fifteen (15) or more employees and was an "employer" within the meaning of the ADA and Title VII.

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2026-04511, alleging disability discrimination and retaliation under the ADA and retaliation under Title VII.

9. The EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff has satisfied all conditions precedent to this action, or they have been waived, and this action is timely.

10. Plaintiff has retained the undersigned attorneys and has agreed to pay them a fee.

11. Plaintiff demands a jury trial on all issues so triable.

**FACTS**

12. Defendant hired Plaintiff on or around September 1, 2025, as a Restaurant Manager.

13. In early 2026, Plaintiff applied for an Assistant General Manager ("AGM") position.

14. Before Plaintiff engaged in protected activity, Defendant's District Supervisor, Dawn, told Plaintiff that he was essentially next in line for the AGM position and needed only some additional training.

15. At the time, the restaurant did not have an AGM, and Plaintiff was already performing many of the duties associated with that role.

***Retaliation in Violation of Title VII***

16. In or around March 2026, Defendant required management employees, including Plaintiff, to complete sexual-harassment training.

17. Shortly after that training, Plaintiff reported to Dawn that Defendant's General Manager was sexually harassing a young female Office Coordinator.

18. Plaintiff reported that the General Manager made inappropriate and offensive comments to the Office Coordinator, stuck his finger in her ear, pulled her hair back, grabbed her by the hips, air-humped behind her, smacked her butt, and stated, "you like it rough."

19. After Plaintiff reported the sexual harassment, Defendant's treatment of him materially changed.

20. For more than a week after Plaintiff's complaint, Defendant allowed the General Manager to continue working with Plaintiff and the Office Coordinator.

21. During that same period, Dawn began pulling employees aside and questioning them about Plaintiff's performance in an effort to obtain negative statements about him.

22. Dawn pressed employees with questions such as, "Are you sure you have never seen Kevin do ________?"

23. Approximately one week after Plaintiff's complaint, Dawn told Plaintiff that he would not receive the AGM promotion and would not move beyond his current level.

24. That decision sharply reversed Dawn's statement only days earlier that Plaintiff was essentially next in line for the AGM position. The intervening event was Plaintiff's report of sexual harassment.

25. Defendant also attempted to deny Plaintiff previously approved vacation time, including Easter Sunday.

26. Defendant reinstated the vacation only after Human Resources became involved, upon Plaintiff's complaint.

27. After Plaintiff's complaint of the sexual harassment, Defendant increased his workload.

28. Although Plaintiff's expected workload was approximately 45 to 50 hours per week, Plaintiff was scheduled for approximately 65 hours per week and at times worked approximately 80 to 90 hours per week.

29. After Plaintiff's protected activity, Defendant also changed Plaintiff's schedule from relatively consistent shifts to fluctuating morning, night, and mid-shifts.

30. Finally, after a second meeting between Plaintiff and Dawn, Defendant terminated the General Manager.

31. Following the General Manager's termination, Plaintiff assumed many of the store General Manager's responsibilities, but Defendant still did not promote Plaintiff or increase his compensation to the AGM level.

32. The difference between Plaintiff's compensation and the AGM compensation was approximately $50,000 annually, in addition to differences in bonus opportunities.

33. After Plaintiff's second meeting with Dawn, Plaintiff promptly complained to Human Resources that Dawn was retaliating against him, including by denying him the promotion to AGM after he reported the General Manager's sexual harassment.

34. Plaintiff also requested a transfer so that he would not have to continue working under Dawn, but Defendant denied that request.

35. Defendant's Human Resources investigation did not result in remedial action concerning Plaintiff's retaliation complaint.

***Discrimination and Retaliation in Violation of the ADA***

36. In or around early April 2026, Plaintiff informed Defendant's Human Resources department that he was in need of two surgeries on his foot, due to Hallux Limitus Rigidus in both of his feet.

37. Plaintiff's foot condition requiring surgery constituted a disability within the meaning of the ADA.

38. Alternatively, Defendant regarded Plaintiff as having a disability based on his foot condition, required surgeries, and need for medical leave.

39. Plaintiff's physician advised that Plaintiff needed a leave of absence of approximately three months so that he could undergo and recover from the necessary foot surgeries.

40. Accordingly, Plaintiff requested the reasonable accommodation of this short and defined medical leave of absence.

41. Defendant initially approved Plaintiff to remain out of work on this medical leave of absence.

42. However, approximately two days before Plaintiff's first scheduled surgery, Defendant threatened to terminate Plaintiff unless he supplied additional medical documentation.

43. Because of Defendant's demand and threatened termination, Plaintiff rescheduled his first surgery.

44. Defendant then rejected Plaintiff's physician-supported need for approximately three months of leave and stated that it could accommodate the first surgery only if Plaintiff returned to work within approximately 30 days.

45. Plaintiff, however, needed a second foot surgery shortly after the first surgery, and his physician did not authorize Plaintiff to return to work in between the surgeries.

46. Defendant required Plaintiff to obtain additional or duplicative medical forms that would support an earlier return to work, even though his physician had already advised that he should remain on leave for approximately three months.

47. However, Plaintiff's physician was unable to alter the course of treatment or authorize Plaintiff to return before medically appropriate.

48. Defendant suggested that Plaintiff return to work at the restaurant using a wheelchair, despite Defendant knowing that using a wheelchair was not feasible, given the duties of Plaintiff's position and the physical layout and operation of the restaurant.

49. Rather than meaningfully engaging with Plaintiff and his physician to identify a workable accommodation, Defendant proposed an option that failed to address his physician-imposed restrictions or his need to complete both surgeries before physically returning to work.

50. Defendant therefore failed to engage in a good-faith interactive process regarding a reasonable accommodation.

51. As a result of Defendant's demands, Plaintiff had to postpone his surgery more than once.

52. Plaintiff did not request indefinite leave. He requested a finite leave of approximately three months, tied to his physician-directed surgical treatment and recovery.

53. With that reasonable accommodation, Plaintiff expected to complete his surgeries and return to his position.

54. Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation.

55. Rather than provide the physician-supported leave or engage in a good faith interactive process regarding reasonable accommodations, Defendant terminated Plaintiff on or around May 12, 2026.

56. Defendant terminated Plaintiff because of his disability and need for accommodation and in retaliation for requesting reasonable accommodation under the ADA.

57. Defendant also terminated Plaintiff due to his report of sexual harassment and his complaint to Human Resources about retaliation, thereby further retaliating against Plaintiff in violation of Title VII.

58. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, lost promotion-related compensation and bonus opportunities, emotional distress, and other damages.

**COUNT I – ADA VIOLATION**
**(DISABILITY DISCRIMINATION)**

59. Plaintiff realleges and readopts the allegations of paragraphs 1 through 15, 36 through 49, 51 through 56, and 58 of this Complaint as though fully set forth herein.

60. Plaintiff is a qualified individual with a disability within the meaning of the ADA. Alternatively, Defendant regarded Plaintiff as disabled.

61. Defendant knew of Plaintiff's disability, required surgeries, and physician-directed need for medical leave.

62. Defendant discriminated against Plaintiff because of his disability by refusing to allow the physician-supported period of leave as a reasonable accommodation and terminating his employment rather than permitting him to complete the necessary surgeries and recovery.

63. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

64. Plaintiff was injured by Defendant's violation of the ADA and is entitled to legal and equitable relief.

***WHEREFORE***, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over this action;

c) A declaration that Defendant violated the ADA;

d) An injunction restraining continued violations of the ADA;

e) Back pay, lost benefits, lost promotion-related compensation, and other remuneration, together with prejudgment interest;

f) Reinstatement or instatement to the position Plaintiff would have held absent Defendant's unlawful conduct, or front pay in lieu thereof;

g) Compensatory damages, including damages for emotional distress, to the extent allowed by law;

h) Punitive damages to the extent allowed by law;

i) Reasonable attorneys' fees and costs; and

j) Such further relief as this Court deems just and equitable.

## COUNT II – ADA VIOLATION (DENIAL OF REASONABLE ACCOMMODATION)

65. Plaintiff realleges and readopts the allegations of paragraphs 1 through 15, 36 through 55, and 58 of this Complaint as though fully set forth herein.

66. Plaintiff had an actual disability within the meaning of the ADA and was a qualified individual capable of performing the essential functions of his position with reasonable accommodation.

67. Plaintiff requested a reasonable accommodation consisting of a finite leave of approximately three months so that he could undergo and recover from medically necessary foot surgeries.

68. Defendant failed to provide that reasonable accommodation. Instead, Defendant rejected Plaintiff's physician-supported restrictions, insisted

that he return within approximately 30 days, demanded additional or duplicative documentation, and ultimately terminated him.

69. Defendant also failed to engage in a good-faith interactive process directed toward an accommodation consistent with Plaintiff's physician-imposed restrictions and treatment schedule.

70. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

71. Plaintiff was injured by Defendant's violation of the ADA and is entitled to legal and equitable relief.

***WHEREFORE***, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over this action;

c) An injunction restraining continued violations of the ADA;

d) Back pay, lost benefits, and other remuneration, together with prejudgment interest;

e) Reinstatement to a comparable position or front pay in lieu thereof;

f) Compensatory damages, including damages for emotional distress, to the extent allowed by law;

g) Punitive damages to the extent allowed by law;

h) Reasonable attorneys' fees and costs; and

i) Such further relief as this Court deems just and equitable.

## COUNT III – ADA RETALIATION

72. Plaintiff realleges and readopts the allegations of paragraphs 1 through 15, 36 through 49, 51 through 56, and 58 of this Complaint as though fully set forth herein.

73. Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation, providing medical information supporting that request, and opposing Defendant's refusal to honor his physician-supported restrictions.

74. Defendant subjected Plaintiff to materially adverse action after he engaged in protected activity, including threats of termination, pressure to return sooner than medically authorized, refusal to provide the requested leave, and termination.

75. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, including the close temporal proximity between Plaintiff's accommodation request and his termination.

76. Plaintiff was injured by Defendant's retaliation and is entitled to the relief available under the ADA.

***WHEREFORE***, Plaintiff demands:

a) A jury trial on all issues so triable to the extent available by law;

b) That process issue and that this Court take jurisdiction over this action;

c) A declaration that Defendant retaliated against Plaintiff in violation of the ADA;

d) An injunction restraining continued violations of the ADA;

e) Back pay, lost benefits, and other remuneration, together with prejudgment interest;

f) Reinstatement to a comparable position or front pay in lieu thereof;

g) Reasonable attorneys' fees and costs; and

h) Such further legal or equitable relief as this Court deems just and proper.

**COUNT IV – TITLE VII RETALIATION**

77. Plaintiff realleges and readopts the allegations of paragraphs 1 through 35 and 57 through 58 of this Complaint as though fully set forth herein.

78. Plaintiff engaged in activity protected by Title VII when he opposed conduct that he reasonably and in good faith believed constituted unlawful sexual harassment by reporting the General Manager's conduct to Dawn and later complaining to Human Resources about retaliation for that report.

79. After Plaintiff engaged in protected activity, Defendant subjected him to materially adverse actions, including denial of the AGM promotion, increased workload, unfavorable schedule changes, attempted denial of approved vacation, denial of his requested transfer, and termination.

80. The temporal proximity and sequence of events support a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

81. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

82. Plaintiff was injured by Defendant's retaliation and is entitled to legal and equitable relief under Title VII.

***WHEREFORE***, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over this action;

c) A declaration that Defendant retaliated against Plaintiff in violation of Title VII;

d) An injunction restraining continued violations of Title VII;

e) Back pay, lost benefits, lost promotion-related compensation, bonus opportunities, and other remuneration, together with prejudgment interest;

f) Reinstatement or instatement to the position Plaintiff would have held absent Defendant's retaliation, or front pay in lieu thereof;

g) Compensatory damages, including damages for emotional distress, to the extent allowed by law;

h) Punitive damages to the extent allowed by law;

i) Reasonable attorneys' fees and costs; and

j) Such further relief as this Court deems just and equitable.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury as to all issues so triable.

Dated this 16th day of October, 2026.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**HANNAH E. DEBELLA**
Florida Bar Number: 1026002
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: hdebella@wfclaw.com
Email: aketelsen@wfclaw.com
Attorneys for Plaintiff